IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

DAVID MCCONNELL,

                    Plaintiff,                          4:17-CV-3010

vs.
                                                    MEMORANDUM AND ORDER
ANIXTER, INC.,

                    Defendant.

The plaintiff, David McConnell, is a veteran of the United States Armed Forces. Filing 1 at 1. McConnell is suing Anixter, Inc., his former employer, for failing to accommodate his service-related disabilities, retaliating against him after he requested such accommodations, and using his service-related disabilities as a motivating factor in its decision to terminate his employment in violation of the Uniformed Services Employment and Reemployment Rights Act, 38 U.S.C. § 4301, *et seq.* (USERRA).

The Court has already dismissed McConnell's failure to accommodate claims—styled as Counts 1 and 2 of the complaint. *See* filing 19. Anixter now moves for summary judgment on McConnell's remaining claims, styled as Counts 3, 4, and 5, which generally allege that McConnell's service-related disabilities were a motivating factor in Anixter's decision to terminate McConnell, and that Anixter also retaliated against McConnell when he sought an accommodation of those disabilities. Filing 1 at 2. For the following reasons, the Court will grant Anixter's motion for summary judgment.

BACKGROUND

McConnell was on active duty in the United States Armed Forces from March 14, 1999 until April 30, 2008. Filing 39 at 2; *see also* filing 44 at 2. Nearly

four years after McConnell left the military, he applied to the "Service Center Manager" position at Anixter's Grand Island, Nebraska worksite. Filing 39 at 3; *see* filing 44 at 2. During the initial interview process, McConnell disclosed that he suffered a back injury while deployed oversees and, as a result, is unable to lift more than forty pounds. Filing 39 at 4; *see* filing 44 at 2. He also said that he suffered from post-traumatic stress disorder ("PTSD") requiring him, at times, to take to take five- to ten- minute breaks to manage stress. Filing 39 at 4; *see* filing 44 at 2. Anixter informed McConnell that neither his lifting restriction nor his need for breaks "would [] be a problem." Filing 40 at 11. So, McConnell began working as Anixter's Service Center Manager on November 26, 2012. Filing 39 at 3; *see* filing 44 at 2.

In his position as Service Center Manager, McConnell primarily worked to ensure that daily orders were processed in a timely fashion. Filing 40 at 10. He also had significant responsibility in cross-training warehouse employees (*i.e.,* making sure that every employee was able to perform the tasks of any position at the warehouse), and managing the scheduling and overtime hours of employees reporting directly to him. Filing 39 at 5; *see* filing 44 at 2.

McConnell, however, had difficulties communicating with some of his subordinates—specifically, Stephanie Wissing and Jackie Anderson. On one occasion in May 2013, McConnell told Wissing to "get the fuck out of [his] facility" and fired her.[1] *See* filing 40 at 18. And in August 2013, McConnell "raised [his] voice" during a disagreement with Anderson such that those outside his office could hear the conversation. *See* filing 40 at 45.

Following the second incident, McConnell was given a written warning demanding that he "clean up [his] language" and "control [his] temper." Filing

---

[1] Wissing was rehired at some point following the incident and as such, McConnell's problems with Wissing appeared to continue. Filing 40 at 16.

40 at 45. After receiving the written warning, McConnell appeared to conduct himself in a more appropriate manner. But on December 8, 2014 he had another "disagreement" with his HR supervisor, Deric Singleton, over staffing issues. Filing 40 at 34. During that argument, McConnell asked for a break for his PTSD. Filing 40 at 26. Singleton told McConnell to "just go ahead and go home, and [he'd] let [McConnell] know when [he] can come back."[2] Filing 40 at 26. McConnell was never informed he could return to Anixter, and on December 12, his employment was terminated. Filing 40 at 29; 39.

McConnell claims he was terminated for seeking reasonable accommodation of his service-related disabilities (*i.e.,* his PTSD, lifting restrictions, and request for a service animal). As such, McConnell filed an employment discrimination charge with the Nebraska Equal Opportunity Commission and the federal Equal Employment Opportunity Commission, which dismissed his charge. Filing 40 at 51. McConnell did not sue Anixter in the ninety-day time limit required by the EEOC, so instead, McConnell filed this suit asserting claims under USERRA, 38 U.S.C. § 4301 *et seq.*

## STANDARD OF REVIEW

Summary judgment is proper if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The movant bears the initial responsibility of informing the Court of the basis for the motion, and must identify those portions of the record which the movant believes demonstrate the absence of a genuine issue of material fact. *Torgerson v. City*

---

[2] More specifically, Anixter claims McConnell said "this is bullshit" and was "irritated" during the conversation. *See* filing 40 at 26-27. McConnell, however, denies those allegation. Filing 40 at 26-27.

*of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial. *Id.*

On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts. *Id.* Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the evidence are jury functions, not those of a judge. *Id.* But the nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts. *Id.* In order to show that disputed facts are material, the party opposing summary judgment must cite to the relevant substantive law in identifying facts that might affect the outcome of the suit. *Quinn v. St. Louis County*, 653 F.3d 745, 751 (8th Cir. 2011). The mere existence of a scintilla of evidence in support of the nonmovant's position will be insufficient; there must be evidence on which the jury could conceivably find for the nonmovant. *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 791-92 (8th Cir. 2011). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Torgerson*, 643 F.3d at 1042.

## DISCUSSION

Generally speaking, McConnell alleges that Anixter violated two provisions of USERRA, §§ 4311(b) and (c), when it terminated McConnell's employment. The first provision, § 4311(b), prohibits an employer from discriminating in employment or taking "any adverse employment action" against any person because the person:

> (1) has taken an action to enforce a protection afforded any person
> under this chapter, (2) has testified or otherwise made a statement

in or in connection with any proceeding under this chapter, (3) has assisted or otherwise participated in an investigation under this chapter, or (4) has exercised a right provided for in this chapter.

38 U.S.C. § 4311(b); *Lisdahl v. Mayo Found.*, 633 F.3d 712, 720 (8th Cir. 2011). The second provision, § 4311(c), is violated when an employee's protected action is a motivating factor in the employer's adverse employment action, unless the employer proves the action would have been taken in the absence of the employee's protected conduct. 38 U.S.C. § 4311(c); *Lisdahl*, 633 F.3d at 720.

McConnell's allegations that Anixter violated § 4311(b)—the "anti-retaliation" provision—are easily disposed of, so the Court will begin there. Specifically, McConnell claims that Anixter retaliated against him on two separate occasions. The first incident occurred in August 2014 when McConnell was written up, allegedly in response to a complaint he made to human resources concerning purportedly anti-military comments made by Wissing.[3] Filing 44 at 8. The second incident was when McConnell asked for a break in December 2014 to accommodate his PTSD during his disagreement with Singleton. Filing 44 at 9. The Court will discuss each allegation of retaliation in turn below.

But before doing so, the Court must address a fundamental flaw in McConnell's first allegation of retaliation—it wasn't pled in McConnell's complaint. Indeed, the operative pleadings only contain allegations that Anixter "retaliated against the plaintiff for asking for accommodation for his service related disability." Filing 1 at 2. The complaint does not contend that Anixter retaliated against McConnell by issuing him a written warning. So,

---

[3] The Court notes that there is little, if anything, to suggest that McConnell's warning was at all connected to his alleged reports of Wissing's comments. *See* filing 40 at 19-

McConnell's attempt to constructively amend the pleadings at this stage of the proceedings is not appropriate. *See Thomas v. United Steelworkers Local 1938, 743 F.3d 1134, 1140 (8th Cir. 2014)*. But irrespective of that, McConnell's allegation that Anixter retaliated against him by issuing a written warning still fails as a matter of law.

To establish a prima facie case of retaliation, McConnell must produce evidence that: (1) that he engaged in statutorily protected activity; (2) an adverse employment action was taken against him; and (3) a causal connection exists between the two events. *Clegg, 496 F.3d at 928*. With respect to the "adverse employment" prong of his retaliation claim, the adverse action must be "materially adverse." *See Lisdahl, 633 F.3d at 721*. This includes, for example, a tangible change in working conditions that produces a material employment disadvantage such as termination, cuts in pay or benefits, or changes that affect an employee's future career prospects. *Id.* (citing *Clegg, 496 F.3d at 930*.) The anti-retaliation protections of USERRA do not, however, provide a remedy for trivial harms. *See id.*

Here, there is no evidence of any "materially adverse" employment disadvantage: McConnell only received a written warning. Filing 40 at 45. And disciplinary warnings have only a tangential effect on ultimate employment decisions and do not constitute adverse employment actions. *Weng v. Solis, 960 F. Supp. 2d 239, 247 (D.D.C. 2013); Ogden v. Potter*, No. 5:08-CV-609, 2010 WL 234727, at *6 (W.D. Tex. Jan. 14, 2010), *aff'd*, 397 F. App'x 938 (5th Cir. 2010); *Arrieta v. Yellow Transp., Inc.*, No. 3:05-CV-2271, 2008 WL 5220569, at *13 (N.D. Tex. Dec. 12, 2008), *aff'd sub nom. Hernandez v. Yellow Transp., Inc., 670 F.3d 644 (5th Cir. 2012)*. So, the Court will grant Anixter's motion for summary judgment on those grounds.

McConnell's alternative allegation, that Anixter terminated McConnell after he asked for an accommodation related to his PTSD, fares no better.[4] Filing 44 at 8. To support his claim, McConnell alleges that he was fired after he informed Singleton that he needed a short break during a December 8, 2014 phone conversation. Filing 44 at 9. During that discussion, McConnell claims that he and Singleton had a "disagreement" over scheduling, and McConnell became "frustrated." *See* filing 40 at 27-28. Because McConnell could "feel [himself] getting tense," he asked for a break from the conversation. *See* filing 40 at 27-28. Singleton allowed McConnell to take a break and further instructed him to stay home for the remainder of the day and McConnell was terminated a few days later. Filing 40 at 29.

But as Anixter correctly points out, McConnell cannot, as a matter of law, establish a prima facie claim of retaliation. As noted above, McConnell must put forth evidence demonstrating that he engaged in statutorily protected activity. § 4311(b). But as the Court made clear in its prior Memorandum and Order, the provisions of USERRA protecting a request for reasonable accommodations under §§ 4312-13 only apply when a veteran seeks reemployment following his military service. Filing 19 at 5. And there is no evidence that McConnell, who served in the armed forces nearly four years before he took his initial position at Anixter, sought <u>re</u>employment triggering

---

[4] In his deposition, McConnell alleges that Anixter discriminated against his service-related disabilities by forcing him to lift over forty pounds and denying his request for a service dog. *See* filing 40 at 21, 24-25. But in his briefing, McConnell focuses on the fact that McConnell "was fired shortly after he asked for a reasonable accommodation for his PTSD." Filing 44 at 9. Accordingly, the Court too will focus on McConnell's requests for breaks to accommodate his PTSD.

reasonable accommodation protection. That means McConnell's request for a break is not protected under USERRA.

And just as problematic to McConnell's retaliation claim is the lack of evidence from which a reasonable jury could find a causal link between McConnell's request for a break and the adverse employment action. *Clegg, 496 F.3d at 928*. McConnell's allegation assumes that Singleton was angered by McConnell's request for a break during their December 8, 2014 disagreement, so he terminated McConnell. *See* filing 44 at 8. But aside from McConnell's vague and conclusory accusation, there is nothing in the record to support that conclusion.[5] To the contrary, McConnell testified that when he first mentioned his PTSD and need for breaks during his hiring interview in 2012, it was made clear that asking for breaks "would not be a problem." Filing 40 at 11. And there is no evidence in the record suggesting it ever was.

More specifically, when McConnell was asked if Singleton honored his PTSD accommodation, McConnell admitted that he did. See filing 40 at 20-21.

---

[5] McConnell attempts cure this deficiency by relying on the temporal proximity between his request for a break on December 8, 2014 and his termination on December 12, 2014. But generally, more than a temporal connection between the protected conduct and the adverse employment action is required to present a genuine factual issue on retaliation. *See Lors v. Dean, 746 F.3d 857, 865 (8th Cir. 2014)*; *see also Pastran v. K–Mart Corp., 210 F.3d 1201, 1206 (10th Cir. 2000)*. And although McConnell's request for a break is close in time to his termination that, without more, is not sufficient to demonstrate that a genuine factual issue exists. *See Sisk v. Picture People, Inc., 669 F.3d 896, 901 (8th Cir. 2012)* (concluding that although the protected activity and adverse employment action were "extremely close in time" the plaintiff failed to provide any other evidence linking her termination to her leave request and thus, a reasonable jury would not have a legally sufficient basis to find for the plaintiff on that issue).

Q. When Mr. Singleton came in, did you say to him I need to take a five- or ten-minute break here because of PTSD symptoms?

A. Yes.

Q. Did he say that was okay?

A. Yes.

Filing 40 at 21. So, far from retaliation, the evidence suggests that Anixter honored McConnell's requests for breaks and accommodated his service-related PTSD.

That leaves McConnell's allegations under § 4311(c). Filing 1 at 2. An employer violates this provision of USERRA when veteran status is a motivating factor in the employer's adverse action, unless the employer proves that the action would have been taken in the absence of membership in the armed services. *Maxfield v. Cintas Corp.*, 563 F.3d 691, 694 (8th Cir. 2009). The employee must initially show that military status was a motivating factor in an adverse employment decision, but an employer can then defeat the claim by proving "by a preponderance of evidence, that the action would have been taken despite the protected status." *Id.* In determining whether veteran status motivates the employer's conduct, the Court should consider a variety of factors, including (1) employer's expressed hostility towards members protected by the statute together with knowledge of the employee's military activity; (2) the proximity in time between the employee's military activity and the adverse employment action; and (3) any inconsistencies between the

proffered reason and other actions of the employer. *Rademacher v. HBE Corp.*, 645 F.3d 1005, 1010-11 (8th Cir. 2011).

But as Anixter correctly points out, the record fails to support any of the above factors. There are two comments made by Anixter employees referencing McConnell's military service which, McConnell claims, support his allegation that his military service was a motivating factor in his termination. The first comment, made in the spring of 2013 by Rich Mansfield—a human resource director from Anixter's Chicago office—involved a reference to McConnell being a "hero." Filing 40 at 21-22. According to McConnell, Mansfield walked into McConnell's office and said "oh, we got a hero here." Filing 40 at 21-22. Based on Mansfield's purportedly condescending tone, McConnell interpreted the statement to be negative. *See* filing 40 at 21. The second comment, made near the end of 2013 or beginning of 2014 by an unidentified human resource director, involved a statement that McConnell could not treat his job as a "military operation" because McConnell is "not in the military anymore." Filing 40 at 20.

Those statements, McConnell claims, expressed Anixter's hostility towards members of the military. But neither of those statements rise to the level of derogation necessary to support an inference of discrimination on the basis of McConnell's military status. *Compare Rademacher*, 645 F.3d at 1011 (finding that statements such as "G** D***** it. I don't like it. . . This better not inconvenience me[]" in reference to the plaintiff's military service did not amount to hostility), *with Staub v. Proctor Hosp.*, 562 U.S. 411, 413 (2011) (referring to military obligations as "a bunch of smoking and joking and a waste of taxpayers' money" and scheduling the plaintiff additional shifts so he could "pay back the department for everyone else having to bend over backwards to cover his schedule for the Reserves" did evince hostility) (cleaned up). And even

if those statements could be construed as expressing some level of hostility towards members of the military, a "few stray remarks" cannot support a finding that an employee's military service was a motivating factor in the adverse employment action. *Rademacher v. HBE Corp.*, No. 4:08-CV-1193, 2010 WL 1329741, at *7 (E.D. Mo. Apr. 5, 2010), *aff'd*, 645 F.3d 1005. So, this factor weighs against McConnell's allegations that his military status motivated the Anixter's conduct.

The timing of McConnell's military activity and his termination does not help his claim either.[6] McConnell last served in the military nearly four years before his termination. Filing 40 at 7; *see also* filing 40 at 39. And the passage of time between his return from duty and his discharge weakens any inference that his military service was a motivating factor in Anixter's decision to terminate him. *See Rademacher*, 645 F.3d at 1011 (finding that two months between the plaintiff's return from service and his discharge did not support the plaintiff's claim that his military service was a motivating factor in his termination).

McConnell's next contention, that there are inconsistencies with Anixter's proffered reason for his termination, is also not persuasive. McConnell claims that when he was terminated, he was informed that the reason for his termination was his use of "foul language" during the December

---

[6] McConnell attempts to bridge this time gap by arguing that he was fired after asking if he could have a service animal for his PTSD. *See* filing 44 at 7; *see also* filing 40 at 49. But the appropriate time frame to consider is McConnell's actual military service, not his request for an accommodation for a service related disability. And even if that was the appropriate time period to consider, McConnell's request for a service animal occurred in September 2013, filing 40 at 29, over a year before he was ultimately fired. And that, too, is far too attenuated to support a claim of discrimination. *Rademacher*, 645 F.3d at 1011.

8, 2014 disagreement with Singleton.[7] Filing 40 at 20. And later, Anixter stated that its reason for terminating McConnell was based on a "fundamental disagreement" between McConnell and Singleton which occurred on December 8. *See* filing 40 at 29; filing 39 at 9.

But at most, the evidence adduced by McConnell suggests that his language during the phone call played a part in Anixter's decision to terminate him. *See* filing 40 at 29; filing 39 at 9. That is wholly consistent with Anixter's proffered reason for terminating McConnell. *See* filing 40 at 29. And without any evidence that something other than the December 8, 2014 disagreement was the catalyst for McConnell's termination, no reasonable jury could find that this factor weighs in favor of McConnell. Accordingly, the Court finds that all three *Rademacher* factors cut against McConnell's allegations that his service-related disabilities were a motivating favor in its decision to end McConnell's employment. So, the Court will grant McConnell's motion for summary judgment on those grounds.

As a final matter, McConnell claims that discriminatory intent based on his military status can be inferred from the "disparate treatment of similarly situated employees." Filing 44 at 6. To support that contention, McConnell points to evidence that Wissing, too, acted "unprofessionally" and cussed at work but was not terminated for her conduct. Filing 44-3 at 1. But as Anixter correctly points out, the test for determining whether employees are similarly situated to a plaintiff is a rigorous one. *Bone v. G4S Youth Servs., LLC,* 686 F.3d 948, 956 (8th Cir. 2012). McConnell must show that he and non-military employees were "similarly situated in all relevant respects." *Id.* That means, the individuals used for comparison (*i.e.,* Wissing) must have dealt with the

---

[7] According to McConnell, he did not—at anytime—use foul language during the December 8, 2014 conversation. Filing 40 at 29.

same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances. *Id.*

But Wissing reported to McConnell and it appears that McConnell reported to Singleton and David Flores. Filing 40 at 11; filing 40 at 36; filing 39 at 8. That means Wissing and McConnell did not share the same supervisor, nor were they subject to the same standards. So, the Court finds McConnell's disparate treatment argument to be without merit. And the Court will grant Anixter's motion for summary judgment on those grounds.

## CONCLUSION

In sum, and for the reasons set forth above, the Court will grant Anixter's motion for summary judgment in its entirety. McConnell's remaining claims, styled as Counts 3, 4, and 5, will be dismissed.

IT IS ORDERED:

1.     Anixter's motion for summary judgment (filing 38) is granted.

2.     A separate judgment will be entered.

Dated this 17th day of September, 2018.

BY THE COURT:

John M. Gerrard
United States District Judge

13